Max A. Nulsen, Respondent, v. Charles Pries-
meyer, Appellant.

St. Louis Court of Appeals, March 27, 1888.

Evidence—Defendant's Intentions, When Inadmissible.—In an
· action for damages on account of injury to plaintiff's mule, caused
·by·negligence of the defendant's servant, evidence that, when the
· defendant was informed of the mishap, he ordered the mule to be
shot, and expected to pay to the plaintiff the animal's value, is
inadmissible.

Appeal from the St. Louis Circuit Court, Hon.
George W. Lubke, Judge.

    ..Reversed and remanded.

Aug. Rebenack, for the appellant :    In an action
to recover for injury from vicious habits of domestic
animals the *scienter* on the part of the defendant must
be shown to entitle plaintiff to recover.    *Bell v. Leslie,*
24 Mo. App. 661 ; *Patee v. Adams,* 4 Pac. Rep. 505 ; 1
Chit. Pl. 82 ; 2 *Id.* 680.; *Decker v. Gammon,* 44 Me. 328 ;
*Vrooman v. Lawyer,* 13 Johns. 339 ; *Buxendin v.
Sharp,* 2 Salk, 662 ; *Mason v. Keeling,* 12 Mod. 332 ;
*Holden v. Shattuck,* 34 Vt. 336 ; *Kennedy v. Morgan,*
57 Vt. 46 ; *Sweeney v. Railroad,* 10 Allen, 372 ; *Rumsey
v. Nelson,* 11 N. E. Rep. 63.    The defendant is not lia-
ble in this action for having ordered the mule shot and
killed.    The mule was injured so that his intestines pro-
truded.    The natural result would have been death.
*Harrison v. Railroad,* 88 Mo. 629, 630 ; *Railroad v.
Finnegan,* 21 Ill. 649 ; *Jackson v. Railroad,* 74 Mo.
526.    The court should have non-suited the plaintiff for
the further reason that it appeared conclusively from
plaintiff's own evidence, that plaintiff, *i. e.,* his driver,
was as negligent as the defendant's driver.    *Schoenlau
·v. Friese,* 14 Mo. App. 436.    There being no conflict of

testimony, the court shall determine the question of negligence. *Fletcher v. Railroad*, 64 Mo. 484. The absence of hitching posts an excuse for not taking due care: *Telegraph Co. v. Quinn*, 56 Ill. 319. The court erred in asking the defendant this question: "Then was that the amount you expected to pay Mr. Nulsen at the time you ordered him shot?" This question and its answer was calculated to prejudice the defendant's case before the jury and was irrelevant, injurious, and improper.

CHRISTIAN WIND, for the respondent: Taking the bits out of the horses' mouths and leaving them to drink, without in anywise securing them, or leaving any one in attendance, on a public thoroughfare like Front street, in East St. Louis, with four railroad tracks, within one hundred feet, boats continually passing up, down, and across the river, was certainly gross negligence. Wharton on Negligence, 820. Plaintiff does not and never did contend that the killing of plaintiff's mule at defendant's command rendered him liable for the injury occasioned by the collision; but we do maintain that it was perfectly proper for us to draw out of defendant on cross-examination an admission that after he had learned the facts he considered himself liable to plaintiff and proposed to pay the reasonable value of the mule.

PEERS, J., delivered the opinion of the court.

It appears in this case that the respondent was the owner of a team, one horse and two mules attached to a coal wagon, which had just been loaded with coal in East St. Louis, and then driven out of the sheds across the railroad tracks, and about seventy-five feet north of the coal-sheds, when the driver returned to the office, to get bridge tickets, leaving his team attached to the load standing on Front street in said city. On one side of the street is a sidewalk and on the opposite side are three railroad tracks, which are on a level with the

street, and from there the street descends to the Mississippi river. Just in front of where respondent's driver stopped his team, another railroad track crosses the street, and connects the other tracks with a depot on the opposite side of the street, leaving plenty of room for one team to pass another on either side.

Appellant was *also* the owner of a coal team, consisting of a wagon and *two* horses. Just prior to the accident the driver in charge of the latter team drove up to a saloon and watering trough, a little south of where respondent's team stood, and in the rear thereof, on the opposite side of the street, and taking the bits out of his horses' mouths, left them and went into the saloon without tieing or otherwise securing them, or leaving any one in charge. While in the saloon, his horses ran away, crossed the street and ran into the respondent's team, the pole of appellant's wagon striking the saddle-mule of the respondent and so injured it that the bowels protruded. Appellant was sent for and when he arrived, learning the facts and seeing the condition of the mule, and believing it could not recover, ordered it taken out of the team and shot.

On the trial below, before a jury, the respondent had a verdict for $203.90, but on a motion for a new trial, was required by the court to remit $53.90 thereof, which he did ; the motion for a new trial was thereupon overruled, and the case now comes here by appeal.

There are a number of questions presented by the record, but as the case will have to be retried, we feel called on to pass upon but one of them. We will say, however, that we discover no error in the action of the court, in refusing the demurrer to the respondent's evidence, nor in giving and refusing instructions. The case was not tried upon the theory of appellant's liability in ordering the mule shot. That was an act of humanity, as it was very evident the animal could not recover from the injury. Neither was recovery sought on the ground of "vicious propensity," but solely on

the theory of *gross negligence* in appellant's servant, in removing the bits from the mouths of the animals, leaving them unhitched and unattended, in a public street where locomotive engines and trains of cars are passing continuously, and where teams are liable, from the very nature of the surroundings, to take fright and run away. The trial court properly declared the law upon all these propositions. But the appellant insists that the court erred in admitting improper and illegal testimony offered by the respondent, and this question we will now consider.

On the trial before the jury in the lower court, the appellant was called as a witness, and, among other things, testified as follows:

"Q. In what position did you find the pole of the wagon of Nulsen?"

Counsel for plaintiff objects.

The court: "The objection will be overruled. Just tell us in what position you found it when you got there?"

"A. When I got over there that wagon stood about three feet from the sidewalk and the tongue was turned to the west. The sidewalk is on the east side of the street, and the tongue and the leader was turned to the west; when I got over there that leader stood pretty near in the middle of the street. The mule, before injured, was worth seventy-five dollars."

Cross-examination by Mr. Wind for plaintiff: "Q. Mr. Priesmeyer, is that what you expected to pay Mr. Nulsen when you ordered that mule shot?" (The witness' last answer having been seventy-five dollars).

Counsel for defendant objects as incompetent and immaterial.

The court: "It is competent on cross-examination; he may answer it if he sees proper."

The court: (To witness) "He has asked you now whether that was what you expected to pay. That means

did you, at the time, having heard the facts, conclude you were liable."

Mr. Rebenack: "Of course I object to that question of the court and want to save my exception."

Mr. Wind: "I also want to object to the court's explanation."

The court: "Then was that the amount you expected to pay Mr. Nulsen at the time when you ordered him shot?"

Same objection and exception as before.

"A. It was my impression then to pay him seventy-five dollars."

Re-direct examination by Mr. Rebenack: "Q. The expectation to pay him seventy-five dollars for the mule was on the theory that your driver was to blame for the accident? A. Yes, sir, that's what's the matter."

"Q. You didn't expect to pay him unless your driver was to blame? A. Yes, sir."

By the court: "Q. Did you expect to pay him whether your driver was to blame or not? Is that what you said? A. I was intending that time to pay him that amount of money to not have any trouble or bad feeling because me and Nulsen were acquainted for years—to keep it out of court."

By Mr. Wind: "Q. Mr. Priesmeyer, after you got over to East St. Louis and you saw the mule, you asked the cause of it, didn't you? A. As a matter of course, I asked how it happened."

"Q. And you were told how it happened? A. Yes, sir."

"Q. And you ordered the mule shot? A. I did so."

This witness went on to say, "that he did not see the accident, was in St. Louis at the time, went over when notified, and knew nothing of or concerning the injury to respondent's mule, except what he *learned* from other parties on his arrival in East St. Louis."

It is difficult to understand upon what theory, or for

what purpose, this testimony of the witness was admissible, in any event, as bearing on the issue of fact before the jury.  As to how the accident happened or what caused it, was all hearsay to him.  True, he ordered the mule shot, but this action is not based upon that fact, nor does the respondent insist that the action of the appellant in this regard rendered him liable for the injury occasioned by the collision.  The evidence above quoted should have been excluded, as it would naturally prejudice the minds of the jury against the defendant below.  We can very easily imagine the effect of this ·character of evidence upon a jury, and the result of such a statement in the hands of an able advocate is very apparent.

W e think that the court erred in permitting this testimony to go to the jury, and, on that ground, the judgment is reversed and the cause remanded for a new trial. All the judges concur.